EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
THE LAW OFFICE OF DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.M.D., | ) Case No. |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** ) **DEMAND** |
| vs. | ) |
| UNITED STATES OF AMERICA; DARRELL SMITH, in his individual capacity. | ) ) ) |
| Defendant. | ) |

**INTRODUCTION**

1. J.M.D. served a sentence in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for over two years.

2. While housed at FCI Dublin, J.M.D. faced constant sexual harassment, sexual abuse, retaliation, and long-lasting traumatization.

///

## JURISDICTION AND VENUE

3. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

4. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

5. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff J.M.D. will be filing an administrative motion to relate this case to those other cases.

## PARTIES

7. Plaintiff J.M.D. was at all times relevant here incarcerated in FCI Dublin.

8. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin. FCI Dublin is a federal female low-security correctional institution.

9. Defendant Darrell Smith was a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

10. While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff J.M.D. Plaintiff J.M.D. was dependent upon Defendant United States for her personal security and necessities.

11. In performing the acts and/or omissions contained herein, Defendant Smith acted under color of federal law, and Plaintiff J.M.D. is informed and believes he acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff J.M.D. He knew or should have known that his conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff J.M.D. and to her

constitutionally and statutorily protected rights. Despite this knowledge, Defendant United States failed to take steps to protect Plaintiff J.M.D. and to ensure her rights to safety from sexual abuse.

**FACTS**

12. Plaintiff J.M.D. was incarcerated at FCI Dublin from on or about June 25, 2021, to on or about October 12, 2023.

13. Plaintiff J.M.D. began working at the compound trash shortly after getting to FCI Dublin.

14. In August or September of 2021, Defendant Smith was the yard officer.

15. While Plaintiff J.M.D. would work, defendant Smith would walk around with her and persistently sexually harass her.

16. Defendant Smith would regularly make lewd comments to her and solicit her to have sex with other prisoners for his sexual gratification.

17. His sexual harassment was consistent and pervasive, occurring every day that she worked while he was the yard officer.

18. On one occasion, Defendant Smith asked her if she would introduce him to her "scissor sister," which she understood to be a reference to a female sexual partner.

19. On another occasion, he asked her whether he could watch her and her "girlfriend" "fuck."

20. On yet another occasion, Plaintiff J.M.D. was throwing out trash and gagged because of the smell. Defendant Smith said something to the effect of "I can only imagine how it would feel to have you gag around me," which she understood to be a reference to performing oral sex on him.

21. On another occasion, when Plaintiff J.M.D. was pushing trash into the compactor, Defendant Smith said something to the effect of "You dirty girls know how I like it - keep pushing it."

22. Defendant Smith would accompany his constant verbal sexual harassment and lewd comments with unwanted touching and leering.

23. Defendant Smith would take every opportunity to brush his body against Plaintiff J.M.D.'s and rub his genitals against her buttocks.

24. Defendant Smith would leer at Plaintiff J.M.D.'s breasts.

25. The harassment was relentless and made Plaintiff J.M.D. feel anxious, unsafe, and uncomfortable in her own skin.

26. Furthermore, Plaintiff J.M.D. heard rumors about officers, including Defendant Smith, sexually abusing other female prisoners, so she believed if she continued working with Defendant Smith, she would be next.

27. Plaintiff J.M.D. was forced to quit her job to escape Defendant Smith's relentless harassment and abuse.

28. She did not report his misconduct right away because she feared retaliation from prison officials.

29. She had seen other women who reported abuse being sent to the Special Housing Unit where they were kept in stark conditions with privileges revoked or having their rooms searched repeatedly without justification and having their belongings confiscated.

30. She feared similar treatment if she reported his behavior.

31. In April of 2023, plaintiff J.M.D. finally reported Defendant Smith's misconduct through the grievance system and directly to the Special Investigative Supervisor ("SIS").

32. Following her report, she spoke to SIS, medical, and mental health, but they did not offer her any resources or protection.

33. Plaintiff J.M.D. was scheduled to begin a Medication Assisted Treatment ("MAT") program 90 days before her release.

34. However, following her report of Defendant Smith's misconduct, she was denied placement in the MAT program until two weeks before her release and only after she advocated repeatedly with her counselor.

35. Other women who were scheduled to be released around the same time as she was were placed in the program 90 days in advance.

36. As a result of the delay, she was deprived the necessary time to acclimate to the program.

37. After she reported Defendant Smith's misconduct, she was also denied medical treatment for four months for a rash that has resulted in permanent scaring.

38. Plaintiff J.M.D. suffered anxiety, fear, sleeplessness, and shame over what Defendant Smith did and the retaliation she suffered. To this day, she is jumpy, anxious, and suffers from post-traumatic stress disorder.

39. Because of defendants' actions, she has trust issues and has difficulty trusting men and authority figures especially.

40. Plaintiff J.M.D. has trouble connecting with others and feels closed off with men. She suffers from flashbacks, and this makes being intimate with her fiancé difficult because he may unknowingly say something that triggers a flashback.

41. Plaintiff J.M.D. was released from BOP custody on October 12, 2023, and she is still on supervised released.

## EXHAUSTION

42. On March 20, 2025, Plaintiff J.M.D., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

43. The BOP acknowledged receipt on April 4, 2025.

44. The BOP has not substantively responded to her claim.

## EQUITABLE TOLLING

45. Plaintiff J.M.D. is entitled to equitable tolling for her FTCA claim.

46. The FTCA's statute of limitations is subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015).

47. Equitable tolling applies when 1) a plaintiff pursued their rights diligently, and 2) extraordinary circumstances prevented timely filing. *Wong v. Beebe*, 732 F. 2d 1030, 1052 (9th Cir. 2013).

48. Courts have long recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, retaliation, and coercion prevented timely filing. *See* e.g., *Su*

*v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24; *Stoll v. Runyon*, 165 F. 3d 1238, 1242 (9th Cir. 1999) (equitable tolling is appropriate where sexual abuse and post-traumatic stress disorder rendered the plaintiff unable to timely pursue claim)).

49. Plaintiff J.M.D. clearly faced extraordinary circumstances, preventing the timely filing of her FTCA claim.

50. Because Plaintiff J.M.D. remained incarcerated within the BOP until October 2023 and is still on supervised release, she continued to experience extraordinary circumstances preventing her from freely accessing the courts or safely pursuing her claims.

51. As long as she remained under BOP custody and control, the threats, coercion, and fear of retaliation continued to silence her.

52. A court-appointed Special Master confirmed that during the time of Plaintiff J.M.D.'s incarceration, "there was no safe or consistent path women could take to file sex abuse complaints," that women were "intimidated and forced to justify why they needed to complete [PREA] forms in the first place, "and that women who tried to report abuse were met with retaliation, including solitary confinement and wrongful disciplinary infractions which extended their incarceration.[1]

53. Plaintiff J.M.D. has diligently pursued her rights by initiating this claim as soon as she felt some level of safety.

54. Within a few months of being released from FCI Dublin, Plaintiff J.M.D. found an attorney, but the attorney did not pursue her claim. When she realized that he was not assisting her in pursuing her claim, she hired the undersigned in January 2025.

55. Plaintiff J.M.D. has further demonstrated that she faced extraordinary circumstances preventing her from filing within the ordinary FTCA statutory period.

---

[1] Lisa Fernandez, FCI Dublin Special Master Finds 'Cascade Failures at Women's Prison, KTVU (Aug. 20, 2024), https://www.ktvu.com/news/fci-dublin-special-master-finds-cascade-failures-womens-prison; Lisa Fernandez, Special Master Issues 1st Report on FCI Dublin Sex Assault, KTVU (Aug. 19, 2024), https://www.ktvu.com/news/special-master-issues-1st-report-fci-dublin-sex-assault; Lisa Fernandez, FCI Dublin Special Master Authorized to Ensure Women Care for at Other Prisons: Judge, KTVU (May 21, 2024), https://www.ktvu.com/news/fci-dublin-special-master-authorized-to-ensure-women-cared-for-at-other-prisons-judge

*J.M.D. v. United States of America*, No.
Complaint for Damages and Jury Demand - 6

56. Defendants are not entitled to benefit from their own misconduct. Equitable tolling of Plaintiff J.M.D.'s statute of limitations prevents this very result. Without the equitable tolling of Plaintiff's statute of limitations, Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting her claim within the statutory period.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.4)

57. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

58. Plaintiff J.M.D. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employee Smith.

59. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

60. This federal employee engaged in the wrongful conduct alleged while in the course and scope of their employment as a federal employee.

61. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

62. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

63. Defendant Smith discriminated against Plaintiff J.M.D. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts.

64. By these acts, Defendant Smith caused Plaintiff J.M.D. physical, mental, and emotional injuries as well as injury to her personal dignity.

///
///

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant Smith)**
**(FTCA; Cal. Civ. Code § 52.4)**

65. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

66. Plaintiff J.M.D. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against Defendant Smith

67. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

68. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

69. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

70. Plaintiff has a nonfrivolous argument that Defendant Smith bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

71. Defendant Smith discriminated against Plaintiff J.M.D. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts.

72. By these acts, Defendant Smith caused Plaintiff J.M.D. physical, mental, and emotional injuries as well as injury to her personal dignity.

**THIRD CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 1708.5)**

73. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

74. Plaintiff J.M.D. brings this claim for sexual assault under the Federal Tort Claims Act for violation of California Civil Code § 1708.5 against the United States based on the conduct of its employee Smith.

75. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

76. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

77. Defendant Smith violated Plaintiff J.M.D.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

78. Defendant Smith's sexual abuse of Plaintiff J.M.D. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

79. Defendant Smith subjected Plaintiff J.M.D. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff J.M.D.'s person.

80. By intentionally subjecting Plaintiff J.M.D. to sexual acts, Defendant Smith acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

81. By repeatedly subjecting Plaintiff J.M.D. to sexual acts, Defendant Smith caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FOURTH CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant Smith)**
**(Cal. Civ. Code § 1708.5)**

82. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

83. Plaintiff J.M.D. brings this claim for sexual assault under California Civil Code § 1708.5 against Smith.

84. Defendant Smith violated Plaintiff J.M.D.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

85. Defendant Smith's sexual abuse of Plaintiff J.M.D. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

86. Defendant Smith subjected Plaintiff J.M.D. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff J.M.D.'s person.

87. By intentionally subjecting Plaintiff J.M.D. to sexual acts, Defendant Smith acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

88. By repeatedly subjecting Plaintiff J.M.D. to sexual acts, Defendant Smith caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FIFTH CLAIM FOR RELIEF**
**BATTERY**
**(against Defendant United States)**
**(FTCA; California Common Law)**

89. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

90. Plaintiff J.M.D. brings this claim for battery under the Federal Tort Claims Act based on California common law against the United States for the conduct of its employee Defendant Smith.

91. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

92. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

93. Defendant Smith committed battery against Plaintiff J.M.D. by repeatedly sexually abusing her while she was incarcerated as a minimum-security prisoner at FCI Dublin.

94. The sexual abuse of Plaintiff J.M.D., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

95. Defendant Smith subjected Plaintiff J.M.D. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff J.M.D.'s person.

**SIXTH CLAIM FOR RELIEF**
**BATTERY**
**(against Defendant Smith)**
**(California Common Law)**

96. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

97. Plaintiff J.M.D. brings this claim for battery under California common law against Smith.

98. Defendant Smith committed battery against Plaintiff J.M.D. by repeatedly sexually abusing her while she was incarcerated as a minimum-security prisoner at FCI Dublin.

99. The sexual abuse of Plaintiff J.M.D., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

100. Defendant Smith subjected Plaintiff J.M.D. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff J.M.D.'s person.

### SEVENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendant United States)
### (FTCA; California Common Law)

101. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

102. Plaintiff J.M.D. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of Smith.

103. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

104. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

105. Defendant Smith engaged in outrageous conduct by repeatedly subjecting Plaintiff J.M.D. to sexual acts while she was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff J.M.D. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

106. Defendant Smith's sexual abuse caused Plaintiff J.M.D. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so

substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

107. Defendant Smith intended to cause Plaintiff J.M.D. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

**EIGHTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant Smith)**
**(California Common Law)**

108. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

109. Plaintiff J.M.D. brings this claim for the intentional infliction of emotional distress against Smith.

110. Defendant Smith engaged in outrageous conduct by repeatedly subjecting Plaintiff J.M.D. to sexual acts while she was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff J.M.D. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

111. Defendant Smith's sexual abuse caused Plaintiff J.M.D. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

112. Smith intended to cause Plaintiff J.M.D. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

**NINTH CLAIM FOR RELIEF**
**BANE ACT**
**(against all Defendants)**
**(FTCA; Cal. Civ. Code § 52.1)**

113. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

114. Plaintiff J.M.D. was in the custody and control of the United States during all relevant times.

115. Defendant Smith violated Plaintiff J.M.D.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

116. Defendant United States, by the actions of its employee Smith, interfered with Plaintiff J.M.D.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

117. As a proximate result of these acts, Plaintiff J.M.D. sustained damage and injury.

**TENTH CLAIM FOR RELIEF
TRAFFICKING VICTIMS PROTECTION ACT
(against all Defendants)
(18 U.S.C. § 1581, *et seq.*)**

118. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

119. Defendant Smith knowingly recruited, enticed, and solicited Plaintiff J.M.D. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

120. Defendant Smith made Plaintiff J.M.D. engage in sex acts through force and coercion.

121. Defendant United States knew of, or should have reasonably known, that Defendant Smith was soliciting Plaintiff J.M.D. in exchange for sex acts, and benefited by failing to protect Plaintiff J.M.D.

122. This conduct has caused Plaintiff J.M.D. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

**ELEVENTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

123. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

124. Defendant Smith knowingly recruited, enticed, and solicited Plaintiff J.M.D. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

125. Defendant Smith made Plaintiff J.M.D. engage in sex acts through force and coercion.

126. Defendant United States knew or should have known that Defendant Smith was engaged in these activities and intentionally placed Plaintiff J.M.D. at greater risk of harm and/or failed to act in a manner that protected Plaintiff J.M.D. from harm.

127. Defendant United States employed Defendant Smith, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

128. This conduct has caused Plaintiff J.M.D. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**TWELFTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant Smith)**
**(Cal. Civ. Code § 52.5)**

129. Plaintiff J.M.D. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

130. Defendant Smith knowingly recruited, enticed, and solicited Plaintiff J.M.D. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

131. Defendant Smith made Plaintiff J.M.D. engage in sex acts through force and coercion.

132. Defendant United States knew or should have known that Defendant Smith was engaged in these activities and intentionally placed Plaintiff J.M.D. in greater risk of harm and/or failed to act in a manner that protected Plaintiff J.M.D. from harm.

133. This conduct has caused Plaintiff J.M.D. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## PRAYER FOR RELIEF

134. Plaintiff J.M.D. prays for judgment against Defendant, and each of them, as follows:

    (a) An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff J.M.D. in an amount to be determined at trial;

    (b) An award to Plaintiff J.M.D. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

    (c) For such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff J.M.D. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 9, 2025

SIEGEL, YEE, BRUNNER & MEHTA

By:_____
    EmilyRose Johns

THE LAW OFFICE OF DEBORAH M. GOLDEN

By: /s/ *Deborah M. Golden*
    Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming

*Attorneys for Plaintiff*